[No. 43706. En Banc. February 11, 1976.]

THE STATE OF WASHINGTON, *Respondent*, v. REGINALD L. HEWETT, ET AL, *Appellants*.

488

*Burkey, Marsico, Rovai, McGoffin, Turner & Mason*, by *Thomas P. Larkin*, for appellants.

*Don Herron, Prosecuting Attorney*, and *Michael R. Johnson, Deputy*, for respondent.

HAMILTON, J.—This appeal involves the admissibility of a video tape deposition of the victim of a robbery. The appeal also concerns whether certain post-arrest identifications violated the due process clause of the fourteenth amendment to the United States Constitution.

On May 20, 1974, Mr. Saul B. Paeste, an officer of the merchant ship MS *Azalia*, met a young woman named Kathy at the Circle Tavern in Tacoma, Washington. After they spent several hours in the tavern, Mr. Paeste and the woman proceeded to another bar located in the nearby bus station. They remained at this bar for 20 minutes, and then Mr. Paeste accompanied the woman to her apartment. On the way to the apartment, Mr. Paeste observed a black man give the woman a key. Shortly after they arrived, two black men entered the apartment and asked Mr. Paeste for money. Mr. Paeste recognized one of the men as the person who gave the woman a key outside the bus station. Mr. Paeste offered the two men $20. The men refused this amount and demanded that Mr. Paeste give them all of his

money. One of the men pointed a gun at the victim and the other displayed a knife. Mr. Paeste gave them $105. Then, the two men forced the victim out of the apartment and into a car. The two men drove the victim a few blocks and ordered him out of the car.

At approximately 2:30 a.m., the victim called the police. Investigator Parks responded to the call and arrived at the scene of the robbery a half hour later. The victim recounted the events of the robbery and gave a detailed description of Kathy and the two black men. Mr. Parks also observed the names of Kathy Huth and appellant Johnny Simms on the apartment mailbox. The officer then drove the victim to the police station. At the station, investigator Parks placed five photographs in front of the victim and he identified a picture of the appellant Johnny Simms. The victim also described the car in which he rode with the two men. Investigator Parks checked the automobile records and found that the appellant Simms owned an automobile similar to the one that the victim described. Mr. Parks drove the victim to his ship which was anchored in the Tacoma harbor.

Investigator Parks returned to the apartment and at 4:45 a.m. arrested appellant Simms, appellant Hewett, and Kathy Huth. Mr. Parks brought the victim back to the station at 5 a.m. The victim spotted the defendant Kathy Huth upon entering the station and identified her as the woman involved in the robbery. The victim later observed the appellants handcuffed to each other and seated on the bench in the hallway of the station. He identified the appellants as the two men who robbed him.

At 11:30 a.m. on May 21, 1974, counsel for the State contacted Mr. M. Fred Weedon, the Director of the Department of Assigned Counsel for Pierce County, and arranged for a hearing before a superior court judge. The State proposed to preserve the testimony of the victim with the use of video tape equipment. Mr. Paeste's ship was due to sail at 10 a.m. the next day. The appellants' counsel claimed that they had insufficient time to prepare for the deposi-

tion. The appellants also objected to the use of the video tape equipment. The trial judge ordered the video taping of the deposition. The deposition began at 4 p.m. and lasted approximately 1 hour 45 minutes.

At trial, the appellants moved to suppress the video tape. The trial court denied the motion. The video tape deposition was played during the trial. The jury convicted the appellants of the crime of robbery and entered a special verdict finding the appellants armed with deadly weapons at the time of the commission of the robbery.

■ Initially, the appellants contend that RCW 10.52.060[1] prohibits the use of video tape recordings in a criminal trial. We disagree. RCW 10.52.060 provides for the taking of a "deposition" of a witness when that witness is unavailable for trial. CrR 4.6[2] provides the procedure for

---

[1]"Every person accused of crime shall have the right to meet the witnesses produced against him face to face: *Provided,* That whenever any witness whose deposition shall have been taken pursuant to law by a magistrate, in the presence of the defendant and his counsel, shall be absent, and cannot be found when required to testify upon any trial or hearing, so much of such deposition as the court shall deem admissible and competent shall be admitted and read as evidence in such case." RCW 10.52.060.

[2] "RULE 4.6
 "DEPOSITIONS.

"(a) When Taken. Upon a showing that a prospective witness may be unable to attend or prevented from attending a trial or hearing or if a witness refuses to discuss the case with either counsel and that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment or information may upon motion of a party and notice to the parties order that his testimony be taken by deposition and that any designated books, papers, documents or tangible objects, not privileged, be produced at the same time and place.

"(b) Notice of Taking. The party at whose instance a deposition is to be taken shall give to every other party reasonable written notice of the time and place for taking the deposition. The notice shall state the name and address of each person to be examined. On motion of a party upon whom the notice is served, the court for cause shown may extend or shorten the time and may change the place of taking.

"(c) How Taken. A deposition shall be taken in the manner provided in civil actions. No deposition shall be used in evidence against any defendant who has not had notice of and an opportunity to participate in or be present at the taking thereof.

taking depositions in criminal proceedings. Pursuant to this rule and upon motion by any party, the court may order a deposition to be taken in order to prevent a failure of justice. The trial court in this case properly ordered the deposition to be taken in order to preserve the testimony of the victim whose ship sailed the following day. CrR 4.6(c) states that "[a] deposition shall be taken in the manner provided in civil actions." Thus, CR 30(b)(4) controls, and it provides:

(4) The court may upon motion order that the testimony at a deposition be recorded by other than stenographic means. In which event the order shall designate the manner of recording, preserving, and filing the deposition, and may include other provisions to assure that the recorded testimony will be accurate and trustworthy. If the order is made, a party may nevertheless arrange to have a stenographic transcription made at his own expense.

A video tape recording clearly falls within the terms "recorded by other than stenographic means." We expressly approve the use of video tape recordings for the taping of depositions.

Both state and federal authorities unanimously support the use of video tapes for the preservation of testimony for trial. *Hendricks v. Swenson*, 456 F.2d 503 (8th Cir. 1972); *People v. Moran*, 39 Cal. App. 3d 398, 114 Cal. Rptr. 413 (1974); *Hutchins v. Florida*, 286 So. 2d 244 (Fla. App. 1973); *Admissibility of Videotape Film in Evidence in Criminal*

---

"(d) **Use.** At the trial or upon any hearing, a part or all of a deposition so far as otherwise admissible under the rules of evidence may be used if it appears: that the witness is dead; or that the witness is unavailable, unless it appears that his unavailability was procured by the party offering the deposition; or that the witness is unable to attend or testify because of sickness or infirmity; or that the party offering the deposition has been unable to procure the attendance of the witness by subpoena. Any deposition may also be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness.

"(e) **Objections to Admissibility.** Objections to receiving in evidence a deposition or part thereof may be made as provided in civil actions." CrR 4.6.

*Trial,* Annot., 60 A.L.R.3d 333 (1974).[3] The commentators also attest to the accuracy and reliability of video tapes in criminal proceedings. Barber & Bates, *Videotapes in Criminal Proceedings,* 25 Hastings L.J. 1017 (1974); Shutkin, *Videotape Trials: Legal and Practical Implications,* 9 Colum. J. Law & Social Prob. 363 (1973); *see The Library —Selected Checklist on Videotape and the Courts,* 30 Record of N.Y.C.B.A. 221 (1975) (collecting source material).

 In *State v. Roebuck,* 75 Wn.2d 67, 70, 448 P.2d 934 (1968), we held that the reproduction of prior testimony does not violate the Sixth Amendment right to confrontation of witnesses if there is a satisfactory showing that:

> (1) the witness is unavailable, (2) the witness was sworn to testify at the previous trial, (3) the accused was present and was afforded the opportunity to cross-examine, and (4) the person who seeks to relate the absent witness' testimony was present, heard the witness testify, and can state in substance the nature of the subject matter sought to be established.

Unlike the *Roebuck* case, the respondent in this case did not call an individual to recount the testimony of the victim. The respondent also declined to take a written deposition of the victim pursuant to CrR 4.6. The respondent chose to video tape the deposition. The use of a video tape is a more efficient means of reproducing the testimony than the record of a preliminary hearing, or the recollection of testimony by a person present at a preliminary hearing. The video tape preserves a permanent and viewable record of all confrontations. It enables the trier of fact to observe the demeanor of the deponent. Therefore, if a party properly authenticates a video tape,[4] and the reproduction

---

[3]In *State v. Newman,* 4 Wn. App. 588, 484 P.2d 473 (1971), this jurisdiction approved of the use of a video tape recording to depict a post-arrest identification.

[4]Neither party addressed the foundational requirements for the admission of a video tape recording into evidence. In *State v. Newman,* 4 Wn. App. 588, 593, 484 P.2d 473 (1971), the Court of Appeals stated:

> To lay a proper foundation for such demonstrative evidence, it is only required that some witness, not necessarily the photographer,

meets the first three requirements of *State v. Roebuck,* *supra,* then its admission into evidence does not violate the appellants' Sixth Amendment right to confront the witness.

The appellants contend that the respondent failed to establish two of the *Roebuck* requirements. The appellants' counsel claim that they were not prepared to adequately cross-examine the victim. The circumstances of this case presented an emergency. The victim's ship was scheduled to sail for Japan the following morning. The victim informed the respondent of the sailing, and the respondent notified the appellants 2 hours later. The respondent afforded the appellants access to all of the evidence that the police seized during the arrest. Respondent also agreed to a 1½-hour delay of the deposition. This provided the appellants with some 4 hours to prepare for the deposition. The deposition continued for 1¾ hours, and the appellants cross-examined the victim for at least an hour. Also, the victim's ship returned to the Pacific Northwest in July of 1974. The respondent notified the appellants of its return and offered to assist the appellants in securing further testimony from the victim. The appellants declined this opportunity for additional cross-examination. This indicates that the appellants were satisfied with the original cross-examination. Therefore, in light of the emergency time restric-

---

be able to give some indication as to when, where, and under what circumstances the photograph was taken, and that the photograph accurately portrays the subject illustrated . . .

The court admitted the video tape in the *Newman* case for demonstrative purposes, *i.e.,* to depict a post-arrest lineup. In this case, the video tape presented testimonial evidence. Therefore, to lay a proper foundation for the use of video tapes to preserve testimonial evidence, the proponent essentially must meet the requirements of *State v. Williams,* 49 Wn.2d 354, 360, 301 P.2d 769 (1956). That is, the proponent must show: (1) that the video and audio portions of the video tape are functioning properly; (2) the operator is trained and experienced in the use of video taping equipment; (3) the audio and visual portions of the recording are authentic and accurate; (4) no changes, additions, or deletions have been made; (5) the video tape has been properly preserved; (6) the video portion is clearly visible and the audio portion sufficiently understandable; and (7) the speakers must be identified.

tions of this case, the appellants were given an adequate opportunity to cross-examine the victim.

The appellants also assert the respondent failed to establish that the victim was unavailable for trial. The victim testified at the deposition that his ship was scheduled to sail at 10 a.m. the following day. At trial, two officers testified that the ship in fact sailed for Japan the next day. The record also indicates that the victim was at sea on the day of the appellants' trial. This evidence established that the victim was unavailable for trial.

The respondent also cooperated fully with the appellants in the effort to obtain the victim's presence for proceedings subsequent to the deposition. Respondent kept the appellants informed of the victim's movements and provided the appellants with an opportunity to secure additional testimony from the victim. The respondent clearly satisfied its requirement of making a good faith effort to obtain the victim's presence at trial. *Barber v. Page*, 390 U.S. 719, 724-25, 20 L. Ed. 2d 255, 88 S. Ct. 1318 (1968). Thus, the deposition satisfied the confrontation clause requirements of the sixth amendment to the United States Constitution.

■■ The appellant Simms also maintains that the trial court erroneously denied the motion to suppress the photographic identification. This identification must comply with due process requirements. *State v. Gefeller*, 76 Wn.2d 449, 458 P.2d 17 (1969); *State v. Kearney*, 75 Wn.2d 168, 449 P.2d 400 (1969). If the deposition identification is based upon pretrial identification procedures violative of due process, then the evidence is inadmissible because it is based on a tainted source. *State v. Moore*, 7 Wn. App. 1, 3, 499 P.2d 16 (1972). In *Simmons v. United States*, 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968), the Supreme Court considered a photographic identification, and stated:

> [E]ach case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identifica-

tion procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

In the instant case, investigator Parks chose photographs of five black men with somewhat similar features from the police files. Mr. Parks testified that he did not tell the victim the appellant's name or that the appellant's picture was one of the five pictures chosen. Parks displayed the photographs to the victim, and the victim selected the photograph of appellant Simms. Nothing in the record suggests that the photographic identification was "impermissibly suggestive," and we find no violation of the due process clause of the Fourteenth Amendment.

The appellants further assert that the trial court erroneously admitted the portion of the video tape testimony that concerned the identification of the appellants while they were seated on the bench in the police station. Essentially, the same due process test applies to the identification of suspects by individually showing them to a victim as applies to photographic identifications. A claimed violation of due process of law depends on the totality of the circumstances surrounding it. *Stovall v. Denno*, 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967); *State v. Moore, supra.* In this case, the police officer returned to the victim's vessel at 5 a.m. and informed the victim that the officer had arrested two robbery suspects. The officer requested the victim to accompany him back to the police station to identify the suspects. The victim walked by the appellants and observed them handcuffed to each other and seated on the bench in the hallway of the station. The totality of these circumstances could be suggestive and conducive to mistaken identification. However, in *United States v. Wade*, 388 U.S. 218, 240, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967), the Supreme Court directed the Court of Appeals to vacate and remand the trial court judgment, and announced an important limitation on the due process requirements of pretrial identifications. The court stated:

We do not think this disposition can be justified without

first giving the Government the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the [improper] lineup identification.

The identification by the victim at the deposition hearing was based on the victim's independent prearrest observations of the appellants. The victim watched appellant Simms give the woman a key outside the bus station. The victim saw both appellants for 10 minutes in the apartment. He later observed them outside the apartment and in the automobile. He also made a proper photographic identification of appellant Simms at the police station. Further, the trial judge also followed the appellants' request concerning the identification procedure at the deposition. The appellants remained in an anteroom of the courtroom during the deposition. The victim gave a detailed description of each appellant, which included a description of the clothes. Then, each appellant was brought into the courtroom. The victim identified the appellants as the individuals who robbed him the night before.

This deposition hearing identification was not tainted by the police station identification. The police station identification consisted of a brief observation by the victim as he walked by the appellants in the hallway of the station. Therefore, we hold that the respondent established that the deposition identification had an independent source and that the admission of the police station identification was not reversible error. *Gilbert v. California*, 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951 (1967); *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967).

The trial court judgment is affirmed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, WRIGHT, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

Petition for rehearing denied April 7, 1976.