Dennis C. BENEFIELD, Appellant,

v.

STATE of Alaska, Appellee.

No. 2652.

Supreme Court of Alaska.

Jan. 17, 1977.

Stephen R. Cline, Asst. Public Defender, Fairbanks and Brian C. Shortell, Public Defender, Anchorage, for appellant.

Natalie K. Finn, Asst. Dist. Atty., and Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, Justices.

## OPINION

BOOCHEVER, Chief Justice.

Dennis C. Benefield appeals his conviction and sentence on four counts of armed robbery. His appeal raises questions involving 1) the right to an attorney in a pre-indictment lineup; 2) whether the conduct of the lineup violated due process rights; 3) the use of a co-defendant's statement where the co-defendant does not testify; 4) the use of hearsay statements and 5) the validity of the sentence imposed. We affirm Benefield's conviction and sentence.

Although the facts of this case are set forth in full in *Blue v. State,* 558 P.2d 636, Opn. No. 1360 (Alaska, 1977), the companion case of Benefield's codefendant, they are briefly discussed again here.

## I. FACTS

On April 17, 1975, at approximately 7:30–8:00 p. m. the Club Manchu Bar in Fairbanks, Alaska was robbed by two men wearing nylon stockings over their heads. Both men were armed, one with a pistol and the other with a rifle. No one was injured in the robbery; although one of the weapons was discharged, a bullet making a hole in the ceiling over the bar. The men took money from customers in the bar as well as from the bar's cash register, which was emptied by the bartender, Frances Nickens.

Shortly after the robbers left the bar, Ms. Nickens telephoned the Fairbanks police emergency number and described the robbers. Although she thought she recognized one of the men, she told the police that she was too upset at the moment to think too much.

Police officers arrived at the Club Manchu approximately half an hour after the robbery and questioned Frances Nickens and the five customers who were present during the robbery. Ms. Nickens stated that she had recognized one of the men whose first name was Dennis. He was a friend of her ex-husband. She had known him for more than a year and had seen him from eight to twelve times during the preceding year. She did not know his last name. A person who entered the bar shortly after the robbery supplied the last name of Benefield for the man named Dennis after hearing Ms. Nickens' description of him. Six police officers, including one who

knew Dennis Benefield, then began a search of several bars which Mr. Benefield was known to frequent.

At approximately 9:30–9:45 p. m., three officers in informal street clothes entered the third bar of their search, the Circle M, where one of the officers recognized Dennis Benefield. A man later identified as Clifton Blue was with Dennis Benefield, and the two were engaged in conversation with a man later identified as Wayne Hyatt. The officers reportedly overheard a conversation in which Hyatt stated to Benefield and Blue that he had heard that they had robbed the Club Manchu. At least one officer heard one or both men deny this accusation. Several officers pulled Benefield and Blue from their bar stools and pushed them against the wall in order to frisk them for weapons. Both men were handcuffed, and both men were given their *Miranda* warnings.[1]

Officer Vogt, who was in charge of the investigation, telephoned Frances Nickens at approximately 10:30 p. m. and asked whether she could come to the Circle M. She arrived approximately twenty minutes later and was shown into the poolroom area of the bar where eight Caucasian men were sitting informally or playing pool. The eight men were the two defendants, three undercover police officers and three patrons of the bar—all similarly dressed in casual clothing. Benefield and Blue were seated at the same table, and there were other people sitting close by. Blue was not wearing handcuffs at the time, by his own admission. While Benefield testified at a preliminary hearing that he was handcuffed when Ms. Nickens viewed him, two officers testified that he was not handcuffed during the Circle M lineup.

Frances Nickens positively identified Dennis Benefield as one of the robbers at the first viewing. She was shown a second lineup approximately five minutes later of all eight men standing against the pool table. At this time, she positively identified Blue as the other robber, largely because of the way he moved and his actions. Based on this identification, Benefield and Blue were formally arrested and charged with armed robbery.

A second pre-indictment lineup was held in district court on April 29, 1975 in which the ten participants wore stockings over their heads. Counsel for the defendants were present. At this second lineup, Ms. Nickens was again able to identify Dennis Benefield as one of the robbers.

Benefield and Blue were subsequently indicted on May 14, 1975. The defendants were jointly tried in June of 1975, and the evidence used against Benefield at trial included Ms. Nickens' eyewitness identification. Ms. Nickens further identified Benefield in court. In addition to eyewitness testimony, two police officers testified at trial to the conversations between Hyatt, Blue and Benefield in the Circle M Bar.

## II.   RIGHT TO AN ATTORNEY AND FAIRNESS OF THE LINEUP AT THE CIRCLE M BAR

██ The issue of the right to counsel at a preindictment lineup is discussed fully in the companion case of *Blue v. State,* 558 P.2d 636, Opn. No. 1360 (Alaska, 1977). In *Blue,* we stated that

a suspect who is in custody is entitled to have counsel present at a pre-indictment lineup unless exigent circumstances exist so that providing counsel would unduly interfere with a prompt and purposeful investigation.

In *Benefield's* case, the lineup and the surrounding circumstances are identical to those in *Blue.* We therefore hold Benefield's right to pre-indictment counsel is outweighed by the exigencies involved here.

██ We further hold that in *Benefield's* case, the Circle M lineup was not "so unnec-

---

1. In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court required a defendant to be advised of his rights pursuant to the fifth amendment of the United States Constitution to remain silent, to the presence of an attorney, either retained or appointed, and that any statement made by him may be used as evidence against him.

essarily suggestive and conducive as to deny due process", given the "totality" of the circumstances.[2]

■ Ms. Nickens knew Benefield and had seen him eight to twelve times within the same year. The lineup contained seven other people, all dressed in similar fashion, and, like Benefield, several had mustaches and long hair. Obviously, if one person in a lineup is handcuffed, the procedure would be so unnecessarily suggestive as to deny due process.[3] While Benefield claims to have been handcuffed, two police officers testified to the contrary, and Blue admitted he was not handcuffed. Ms. Nickens stated that not until after the identification did it appear as if the police were going to handcuff Benefield. It is therefore clear that she did not observe handcuffs on Benefield at the time of her identification. Under the totality of these circumstances, we cannot say that Benefield was denied a fair lineup.

### III. THE STATEMENTS OF BENE-FIELD'S CO–DEFENDANT

At trial, police officers testified to various statements made by Blue, Benefield's co-defendant. According to their testimony, Blue, when confronted with Hyatt's accusation, denied participation in the robbery, and "Mr. Blue made a statement that if they were going to be accused of an armed robbery, then they might as well go out and perform one or do one". The police further testified that Blue stated that he owned no firearms of any kind, that he had been with Benefield the entire day, that

they had both been to the 49er Club before coming to the Circle M Club, and that at no time had he and Benefield been separate for any substantial length of time.

■ We agree with defendant that confessions or other inculpatory statements of a co-defendant which are used at trial violate a defendant's right of confrontation, if the co-defendant is never subject to cross-examination.[4] *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).[5] None of the statements made by Blue, however, leads us to reverse Benefield's conviction.

■ Blue's denial of the robbery and statement "if they were going to be accused of such a thing, they might as well do it", is in no way inculpatory. To the contrary, it indicates that Blue and Benefield were *not* involved in the robbery. Similarly, the statement that Blue owned no firearms does not inculpate Benefield in any way. Therefore, these statements do not violate Benefield's right of confrontation.[6]

Blue's statement that he was with Benefield the entire day and that they were not separated for any substantial amount of time is more problematical. This statement indicates that Benefield spent the evening during the time of the robbery with Blue, who fits the description of the tall robber. The statement is thus inculpatory.

■ Although admission of this statement violated Benefield's right to confrontation as guaranteed by the United States and Alaska Constitutions,[7] we hold that the

---

2. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247, 1253 (1968); *Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 18 L.Ed.2d 1199, 1206 (1967); *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Buchanan v. State,* 554 P.2d 1153, 1159 (Alaska 1976); *Noble v. State,* 552 P.2d 142, 146 (Alaska 1976); *McCracken v. State,* 521 P.2d 499, 501 (Alaska 1974); *Davis v. State,* 499 P.2d 1025, 1032 (Alaska 1972).

3. *See McCracken v. State,* 521 P.2d 499, 503 (Alaska 1974); *State v. Hewett,* 86 Wash.2d 487, 545 P.2d 1201, 1206 (1976); *State v. Rodriquez,* 110 Ariz. 57, 514 P.2d 1245, 1247 (1973); *State v. Sadler,* 95 Idaho 524, 511 P.2d 806, 811 (1973).

4. Alaska Constitution, art. I, § 11 states: "The accused is entitled . . . to be confronted with the witnesses against him . . .."

5. We have adopted and applied the *Bruton* rule in *Lemon v. State,* 514 P.2d 1151 (Alaska 1973); *Mead v. State,* 504 P.2d 855 (Alaska 1972). *See also Whitton v. State,* 479 P.2d 302 (Alaska 1970).

6. *Whitton v. State, supra* at 315.

7. Art. I, § 11 (*see* note 4 *supra* ). *Bruton v. United States, supra; Dutton v. Evans,* 400 U.S. 74, 79, 91 S.Ct. 210, 27 L.Ed.2d 213, 221 (1970); *Mead v. State, supra* at 857.

error was harmless "beyond a reasonable doubt." [8] Significantly, there was testimony that Benefield had stated "that he had been with Mr. Blue all evening and part of the afternoon and they had been out drinking". These statements were properly introduced to the jury. Since the contested statements by Blue were identical to Benefield's own admissions, it is unreasonable to conclude that Blue's statements influenced the verdict here. We therefore hold that the admission of Blue's statement was harmless error.

## IV. HYATT'S HEARSAY STATEMENTS

In *Blue v. State, supra,* we held that admission at trial of Hyatt's statements that he had been told that Blue and Benefield had committed the robbery violated Blue's right to confrontation and was inadmissible hearsay. Under the facts of that case, we further held that the error was reversible. While the admission of Hyatt's statements are also erroneous in Benefield's case, we must now view the error in relation to the admissible evidence against Benefield to determine whether the error was "harmless beyond a reasonable doubt".[9]

■ Unlike the case of *Blue,* which involved less certain eyewitness identifications, we are faced here with several strong identifications. Ms. Nickens, the bartender, recognized Benefield during the robbery. He was a friend of her former husband, and she had seen him eight to twelve times within the year before the robbery. She immediately identified Benefield at the Circle M lineup and again identified Benefield in the district court lineup, even though the lineup participants were masked. In addition to these strong identifications, a significant factor in our determination is Benefield's own admission that he had spent part of the afternoon and all evening with Blue, who fits the description of the tall robber, and who was identified by the bartender at the Circle M lineup and at trial. We further note that the hearsay accusations contained in Hyatt's statements were cumulative of Ms. Nicken's accusation, which the jury properly heard.[10] Given all the evidence relevant to Benefield's conviction, we think it clear beyond a reasonable doubt that Hyatt's statements did not influence the jury's verdict. We therefore find the error to be harmless.[11]

## V. SENTENCE APPEAL

Benefield also appeals from a sentence of fifteen years with five years suspended for four counts of armed robbery. Robbery carries a maximum sentence of fifteen years,[12] and the use of a firearm establishes

---

8. *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 17 L.Ed.2d 705, 710–11 (1967); *Evans v. State,* 550 P.2d 830, 840 (Alaska 1976).

9. *See* note 8, *supra.*

10. In the case of *Blue v. State,* we indicated that Ms. Nickens was not able to identify Blue at the time of the robbery, although she did recognize Benefield. The substance of Hyatt's statement was therefore merely cumulative of the more direct accusation of Ms. Nickens which pertained specifically to Benefield.

11. The state argues that Benefield waived his objection to Hyatt's hearsay statement by specifically *withdrawing objection.* Counsel for Benefield argues he only withdrew objection so far as it related to an undesired limiting instruction on hearsay, but that his intent was to maintain his objection to Hyatt's statement itself. We need not reach the issue of counsel's waiver given our determination that the error was harmless beyond a reasonable doubt. We

do take this opportunity, however, to point out that as we read the record, when defense counsel withdrew his objection to Hyatt's statement, he did so in general terms and did not state the limits of his withdrawal. While we would generally resolve ambiguities against waiver, an appellate court cannot speculate as to the intent of counsel's withdrawal of objection. Therefore, *to avoid possible confusion,* we caution counsel to make clear on the record the nature of any objection and the limits of any withdrawals.

12. AS 11.15.240 states:
    *Robbery.* A person who, by force or violence or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

a minimum sentence of ten years.[13]

■ A sentence review must be carried out to effectuate the purposes of the Alaska Constitution[14] and the sentence review statute.[15] In implementing these provisions, this court has recognized the following goals of criminal sanctions: 1) rehabilitation of the convicted offender into a non-criminal member of society; 2) isolation of the offender from society to prevent criminal conduct during the period of confinement; 3) deterrence of the other members of the community who might have tendencies toward criminal conduct similar to those of the offender; 4) deterrence of the offender himself after release; 5) community condemnation of the individual offender, or in other words, the affirmation of societal norms for the purpose of maintaining respect for the norms themselves.[16] To make a reasoned sentence decision, the sentencing judge must determine the priority and relationship of these objectives in any particular case.[17]

■ Although the primary responsibility for sentencing rests with the trial court, the scope of appellate review requires that we make our own examination of the record, focusing on the need for protecting the public, the nature of the crime, and the defendant's character. This independent examination of the justice of a particular sentence is necessary if the review process is to function effectively.[18] Our standard of review on a sentencing appeal is to determine whether the trial court's imposition of sentence was "clearly mistaken."[19]

With these sentencing objectives in mind, we examine the facts of this case. We begin by noting that the trial court properly discussed his application of each of the standards established in *State v. Chaney, supra.* In applying these standards, the trial court noted he was doubtful as to Benefield's potential for rehabilitation, that there was a need to isolate Benefield from society, that the sentence would deter Benefield and others, that robbery is a serious offense, placing particular emphasis on community condemnation and that Benefield was a dangerous offender and a habitual criminal.

It also considered the fact that Benefield was twenty-four years old at the time of the offense, which accounted for its suspension of five years.

The trial court further noted that Benefield's prior involvement with the law was a factor and that this was not his first felony. An examination of the presentence report

13. AS 11.15.295 states in part:
   *Use of firearms during the commission of certain crimes.* A person who uses or carries a firearm during the commission of a robbery . . . is guilty of a felony and upon conviction for a first offense is punishable by imprisonment for not less than 10 years.

14. Alaska Constitution, art. I, § 12 provides: "Penal administration shall be based on the principle of reformation and upon the need for protecting the public".

15. AS 12.55.120.

16. *Cleary v. State,* 548 P.2d 952, 953 (Alaska 1976); *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970).

17. *Nicholas v. State,* 477 P.2d 447, 448 (Alaska 1970).

18. The objectives of sentence review are:
   (i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;
   (ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;
   (iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and
   (iv) to promote the development and application of criteria for sentencing which are both rational and just.
   *State v. Chaney,* 477 P.2d 441, 443 (Alaska 1970) (footnote omitted); *Cleary v. State, supra* at 953 n. 2.

19. *Cleary v. State, supra* at 954 n.8; *Nicholas v. State, supra* at 449. In some cases, a new standard, the "zone of reasonableness", was discussed. However, in *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974), this court analyzed both formulations and adopted the "clearly mistaken" standard exclusively.

indicates that Benefield had been convicted of two counts of possession of forged checks in 1971. His record further shows misdemeanors including possession of drugs twice in 1974, operating a motor vehicle under the influence in 1974 and 1969, and two occasions of intoxication in public in 1970 in addition to various failures to make court appearances in 1971. The pre-sentence report indicates that the possession of forged checks arose from a dispute with Benefield's employer/landlady over alleged non-payment of wages and involved a little over $100.00.

As we view the record, we cannot agree with the superior court in its characterization of Benefield as a "habitual criminal". The nature of Benefield's criminal activity in the past involves alcohol abuse and marijuana possession as well as a felony involving only injury to property. It is not so extensive as to indicate habitual patterns of behavior. We also view fifteen years with five suspended as a rather harsh sentence for a youthful offender who is married, has a reasonably good work history and numerous letters in support of his character where this is the offender's first serious crime involving potential injury to persons.[20]

Nevertheless, robbery is a very serious crime.[21] In this case, both Benefield and his co-defendant were armed, and one of the weapons was fired during the commission of the felony. We cannot overlook the serious potential for personal injury to the public.

Comparing Benefield's sentence to those of others convicted of robbery, it is clearly harsher than some,[22] but it is also consistent with others.[23] Under these circumstances, while we consider this a severe sentence, we cannot say that the trial court

---

20. In *Donlun v. State,* 527 P.2d 472, 475 (Alaska 1974), we stated:

    The American Bar Association has stated that in the vast majority of cases prison sentences are significantly higher than are needed to adequately protect the interests of the public and that, except for cases involving *particularly* serious offenses, dangerous offenders and professional criminals, maximum prison terms ought not to exceed five years. (emphasis in original)

21. R. Erwin, Five Years of Sentence Review in Alaska, 5 U.C.L.A.–Alaska L. Rev. 1, 13 (1975) states:

    Robbery involves somewhat different considerations, given its higher potential for injury. The court has affirmed substantial sentences where violence has actually occurred or where life has been endangered, or where prior convictions indicate that "less stern measures have proven unsuccessful." Nonetheless, the opinions evidence a willingness to take a hard look at the age, background and psychiatric profile of the individual offender, and it cannot be said that the court considers the possibility of sentence relief to be automatically foreclosed in the robbery area. However, it would appear appropriate to take into consideration the potential injury to the victim in arriving at a proper sentence. Certainly, the use of weapons aggravates the nature of the crime. (footnotes omitted)

22. *See, e. g., Bradley v. State,* 535 P.2d 1031 (Alaska 1975) (five-year sentence for robbery affirmed); *Holloway v. State,* 535 P.2d 467 (Alaska 1975) (five-year sentence for robbery affirmed); *Roehl v. State,* 521 P.2d 1240 (Alaska 1974) (concurrent six-year sentences for two counts of robbery affirmed).

23. *Cleary v. State,* 548 P.2d 952 (Alaska 1976) (two consecutive ten-year sentences in addition to five-year federal sentence reversed and remanded); *Davenport v. State,* 543 P.2d 1204 (Alaska 1975) (twenty-year sentence remanded); *Avery v. State,* 514 P.2d 637 (Alaska 1973) (fifteen years reversed and remanded); *Hixon v. State,* 508 P.2d 526 (Alaska 1973) (ten-year sentence for robbery affirmed); *Hawthorne v. State,* 501 P.2d 155 (Alaska 1972) (ten-year sentence for robbery remanded for psychological evaluation and resentencing); *Robinson v. State,* 492 P.2d 106 (Alaska 1971) (ten-year sentence for robbery affirmed); *Robinson v. State,* 484 P.2d 686 (Alaska 1971) (sentence creating term of twenty-two years imprisonment remanded).

    Although we remanded most of these cases for resentencing, we did not do so because we were convinced that the sentences were excessive. In *Hawthorne,* we did not reverse a ten-year sentence although we remanded for psychological evaluation. We recommended a psychological evaluation for purposes of resentencing in *Davenport,* and in *Robinson,* 484 P.2d 686 (Alaska 1971), we remanded for psychological evaluation as well as further evidence on parole board policies. In *Avery, supra,* we reversed a fifteen-year sentence based on improper sentencing procedures but indicated that under the facts of that case, a fifteen-year sentence might not be excessive.

was "clearly mistaken". The trial court properly considered all of the appropriate objectives and elements of sentencing, and furthermore imposed a sentence basically consistent with other robbery convictions. We must therefore uphold the trial court's imposition of the sentence.

The decision of the trial court is accordingly

AFFIRMED.