STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. WILLIE WASHINGTON, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 19, 1984—Decided June 5, 1985.

Before Judges FRITZ, GAULKIN and LONG.

*Joseph H. Rodriguez,* Public Defender, attorney for appellant (*Michael C. Kazer,* Designated Counsel, on the brief).

*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney for respondent (*Olivia Belfatto,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

FRITZ, P.J.A.D.

This case implicates a question, novel in New Jersey, respecting the admissibility of videotaped depositions in a criminal trial. Because of the nature of the question and the current and topical issues involving other but similar uses of videotaping including, but not limited to, the sequestered "live" videotaping of child victims of sexual abuse in lieu of actual appearance during a hearing (see *L.* 1985, *c.* 126), we pause at the outset to emphasize the limited extent of our exploration of the matter. Although counsel for defendant offers a number of reasons for rejecting the proffered deposition, such as the argument that the Bergen County Police Academy is not the "most appropriate" place for the taking of the deposition, it is

clear that both below and here the only legal issue raised respecting the offer of the depositions in evidence was a Sixth Amendment confrontational one. This was posited as the only issue in the written opinion of the trial judge on the State's motion for leave to take the deposition. Here it is presented in an insistence that "the court's order permitting the video taped de bene esse deposition of Mr. Tombak violated defendant's right of confrontation and cross examination." Accordingly, our determination as far as the deposition is concerned is limited to the question of admissibility of pretrial videotaped depositions *de bene esse* as against Sixth Amendment confrontational objections.[1]

It is not our purpose to explore other ramifications of video-taped presentations nor to consider other questions which might impact upon the admissibility of any proffered evidence (such as, for instance, relevance, chain of possession, authentication, professional qualification, etc.) including depositions and documentary or demonstrative evidence. Except in the presence of controlling law, the latter considerations are generally left to the sound discretion of the trial judge, *Purdy v. Nationwide Mut. Ins. Co.,* 184 *N.J.Super.* 123, 130 (App.Div.1982) and *cf.* 4:14–9, as we have left them in this case. We are persuaded, however, that the confrontational issue comes within the purview of legal questions and that is the one we here decide.

---

[1]We are not insensitive to the fact that a hearsay objection might conceivably have been raised. However, it was not, and so we see no reason to consider that issue here. *State v. Souss,* 65 *N.J.* 453, 460 (1974); *Nieder v. Royal Indemnity Ins. Co.,* 62 *N.J.* 229, 234 (1973). Were we to think a hearsay objection substantial—and in the light of *Evid.R.* 5 and the impact of burgeoning high technology aids which it seems must necessarily cause rethinking in many areas of the law, we must not be deemed tacitly to have arrived at that conclusion—we would not in any event find plain error. We are satisfied that in all the circumstances of this case, including the knowledge of all that the deposition would likely be used at the trial, the presence of a judge and the opportunity for defense counsel to participate and cross-examine, any error was harmless, *i.e.,* had no capacity to effect an unjust result. *State v. Macon,* 57 *N.J.* 325 (1971).

As to that question, with Judge Minuskin in the trial court, we are satisfied that there is no constitutional impediment to the taking of these depositions and their admission at the trial.

The witness deposed was a victim of the armed robbery with which defendant is here charged. The trial judge made the following findings in the opinion by which he granted leave to the State to take the deposition:

> In support of the motion the State has established that the victim, Michael Tombak cannot appear in court due to a severe cardiac condition. At a prior court hearing he sustained a heart attack requiring hospitalization. The trial date was adjourned several times in anticipation of his recovery. This has not occurred and his physician states that he cannot appear because of his illness. The matter is listed peremptorily on a date certain to be tried or dismissed. The victim's testimony is essential to the State's case.

These facts are not challenged. Irrespective of this, they might reasonably have been reached on sufficient credible evidence in the whole record as a result of which we would not disturb them in any event. *Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474 (1974).

The right of an accused "to be confronted with the witnesses against him" is protected in New Jersey not only by the application of the Sixth Amendment to the United States Constitution to the States through the Fourteenth Amendment, but by a parroting of that language in the Constitution of New Jersey. *N.J. Const.* (1947), Art. I, par. 10. Distilled in the relatively recent case of *Ohio v. Roberts,* 448 *U.S.* 56, 100 *S.Ct.* 2531, 65 *L.Ed.*2d 597 (1980), the purposes of the constitutional protection afforded by the confrontation clause are "a preference for face-to-face confrontation at trial" and a securing of the right of cross-examination. 448 *U.S.* at 63, 100 *S.Ct.* at 2537. At the outset we observe that the United States Supreme Court thereby distinguishes between the desirability, expressed in terms of "preference," of face-to-face courtroom confrontation and the "secured" right of cross-examination. This alone suggests that the confrontation guaranteed by the clause is not necessarily one in a courtroom. *But see Califor-*

*nia v. Green,* 399 *U.S.* 149, 157–158, 90 *S.Ct.* 1930, 1934–1935, 26 *L.Ed.*2d 489 (1970). But the matter was not left to inference in *Ohio v. Roberts.* There it is expressly held that "competing interests, 'if closely examined,' [citation omitted], may warrant dispensing with confrontation at trial." 448 *U.S.* at 64, 100 *S.Ct.* at 2538.

In view of the long-standing doctrine requiring, with little exception, face-to-face confrontation before the triers of the fact, *California v. Green, supra; Mattox v. United States,* 156 *U.S.* 237, 15 *S.Ct.* 337, 39 *L.Ed.* 409 (1895),[2] and the defense against its demise which appears in the dissent in *Ohio v. Roberts,* the question rounds out to one of whether, assuming the importance of the testimony of the witness and the certain unavailability of the witness for a courtroom hearing, the purposes to be served by the erstwhile stringency in application of the rule are served in a videotape situation. We are satisfied that they are for the reasons which Judge Minuskin set forth:

Although it may be uncertain that defendants' constitutional rights are satisfied in a written deposition hearing because the jury is deprived of viewing the witness' demeanor, the same argument would not apply to videotape. Indeed, television replay in a courtroom would permit the jury to observe his mannerisms, voice inflections and his reactions, as well as his responses to questions asked of him. The jury's observation in this television-oriented

---

[2]Even *Mattox,* carefully articulated, presaged the latitude sanctioned by *Ohio v. Roberts,* saying:

We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted.... Many of its provisions in the nature of a bill of rights are subject to exceptions, recognized long before the adoption of the Constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried farther than is necessary to the just protection of the accused, and farther than the safety of the public will warrant.

And see *Douglas v. Alabama,* 380 *U.S.* 415, 418, 85 *S.Ct.* 1074, 1076, 13 *L.Ed.* 2d 934 (1965) where Mr. Justice Brennan in an opinion as to which there was no dissent, said, "Our cases construing the [confrontation clause of the Sixth Amendment] hold that a primary interest secured by it is the right of cross-examination; and adequate opportunity for cross-examination may satisfy the clause even in the absence of physical confrontation."

society would be even more directed at the witness' every move. The witness is exposed to perjury when he is administered the oath. Cross examination can be satisfied by permitting its use as a condition of the granting of the order.

These and other considerations implicit in the constitutional mandate were given careful attention by the trial judge. Although he did not feel that the procedure was required by the constitutional language, he required the presence of a trial judge during the deposition "in order to further assure that the witness is impressed with the seriousness of the proceeding and the fact that if he does not tell the truth, he is subject to the penalties for perjury." He noted that this would also provide for immediate ruling on objections.

The "competing interests" pointed up in *Ohio v. Roberts* are described in a different setting in *State v. Rechtschaffer,* 70 *N.J.* 395, 405 (1976). They involve a State interest and the interest of the defendant. These are obvious here. The State has the interest described in *Rechtschaffer*—that of "seeing that there is a fair trial designed to end in a just and equitable judgment," *ibid.*—and vindication of the public welfare in the competent prosecution of those charged with crime. *See State v. Laganella,* 144 *N.J.Super.* 268, 290 (App.Div.1976), app. dism. 74 *N.J.* 256 (1976). Defendant has the right to be confronted by witnesses against him, including cross-examination of those witnesses, and, as *Mattox* and *California v. Green* make clear, the right to have the trier of the fact witness that confrontation, although not necessarily at the time or place of that confrontation. We are satisfied that the trial judge here protected these rights for both parties. We hold there was no error in granting leave to take the deposition and no error, insofar as the confrontation clauses of the Constitutions of both the United States and New Jersey are concerned, in the admission of the deposition in evidence. A case bearing a remarkable similarity to the matter before us in the respect with which we are here concerned reached the same result. *United States v. Tunnell,* 667 *F.*2d 1182 (5 Cir.1982).

Relevant opinions in other state courts suggest uniform concurrence: *see State v. Melendez*, 135 *Ariz.* 390, 661 *P.*2d 654, 656–657 (Ct.App.1982); *State v. Burns*, 112 *Wis.*2d 131, 332 *N.W.*2d 757, 763–766 (Sup.Ct.1983); *State v. Martinez*, 95 *N.M.* 445, 623 *P.*2d 565, 568 (Sup.Ct.1981); *State v. Hewett*, 86 *Wash.*2d 487, 545 *P.*2d 1201, 1204–1205 (Sup.Ct.1976), and *People v. Moran*, 39 *Cal.App.*3d 398, 114 *Cal.Rptr.* 413, 417 (Ct.App.1974).

■ Having said all that, we acknowledge that the right of confrontation assured by both the Federal and the State constitutions is not something to be disregarded or lightly measured. For that reason we believe that before a deposition videotape is admitted in evidence the State must bear a heavy burden of demonstrating to the trial judge that the witness in question is literally unavailable. Further, the trial judge must satisfy himself that no prejudice will inure to defendant beyond that which would be inflicted by a live witness testifying against him or her in the courtroom (and, of course, beyond that which the defendant will insist is produced by the inability of the jury to see the witness face to face). The right of cross-examination at the videotaping must be assured. Finally, the trial judge must be particularly careful in his charge to the jury to instruct the jurors that no difference is to be accorded between the videotaped evidence and the evidence presented in the courtroom; they must not infer anything special or demeaning or dire or irresponsible in the fact of a videotaped presentation. In the proper circumstances the judge might well advise the jury that for reasons with which they need not be concerned, the witness was unavailable to testify at the trial and the method employed was chosen so the jury would not be deprived of the testimony. In this regard the trial judge must be careful not to leave the impression with the jury that the videotaped testimony is either of greater or lesser importance than live testimony.

Defendant also urges, as grounds for the appeal, that he was "improperly tried in a joint trial," that it constituted reversible error to admit testimony from one who said he heard defendant utter a statement which could reasonably be inferred to have exculpated a codefendant and inculpated him and who reported he was threatened by defendant if he testified, and that the sentence imposed was "manifestly excessive." We have considered these grounds and the arguments of counsel with respect thereto in the light of the whole record and applicable law and find them to be clearly without merit. *R.* 2:11–3(e)(2).

Affirmed.