FLORENCIO P. HERNANDEZ, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 6438

November 30, 1971                    490 P.2d 1245

*Robert G. Legakes,* Public Defender, *Jeffrey D. Sobel* and *Thomas D. Beatty,* Deputy Public Defenders, Clark County, for Appellant.

554

*Robert List,* Attorney General, *Roy A. Woofter,* District Attorney, and *Charles L. Garner,* Deputy District Attorney, Clark County, for Respondent.

**OPINION**

By the Court, BATJER, J.:

A jury found Florencio Hernandez guilty of robbery and he was sentenced to eight years imprisonment. He appeals from

that judgment and asserts a new trial must be granted because he was denied due process of law. Finding no violation of due process, we affirm.

Miss Marie Offord was working as a night auditor at the Hyatt Lodge in Las Vegas, Nevada, in the early morning of September 21, 1969. At approximately 1:30 a.m. a man later identified as Hernandez entered the motel office and asked Miss Offord about accommodations.

At that time Hernandez stated he was waiting for friends who were attempting to cash traveler's checks at a nearby hotel. After waiting about fifteen minutes he left. Later, at approximately 2:50 a.m., Hernandez returned, stated he was still waiting for his friends, and suddenly he jumped over the counter and placed a revolver at Miss Offord's ribs stating: "This is a stick-up." Upon the robber's command, Miss Offord opened the cash drawer and was then forced into a back room where she was struck over the head. When she returned from the back room, she found the cash drawer empty and the robber gone.

Shortly after the robbery the victim was shown two books of mug shots, but she failed to identify a suspect. She was also shown small groups of photographs on several occasions during the following weeks, but again no identification was made. In early October Hernandez was implicated in this crime by his roommate, and this led the police to take another group of photographs to Miss Offord's home. Apparently only three photographs were shown the victim at this time; she immediately identified the one of Hernandez as that of the man who had robbed her. These photographs were not preserved for trial.

During appellant's trial, the court questioned Miss Offord in the presence of the jury. This questioning by the court occurred after both the prosecution and the defense had concluded their examination of this witness.

Hernandez asserts his due process rights were violated and a new trial must be granted because: (1) The photographic line-up was impermissibly suggestive, and the state failed to preserve the group of photographs from which the identification was made, and; (2) the trial judge acted in an improper manner and to the prejudice of the appellant when he propounded questions from the bench to the witness in the presence of the jury.

1.  The assertion that the photographic line-up was impermissibly suggestive is not supported by the evidence. The victim

testified that the officers made no statement at the time of the identification in an effort to encourage her to identify a suspect. Although Miss Offord could not clearly recall the likeness of any photograph shown her other than the one of Hernandez, the officer testified that the photographs were chosen because they were all of individuals of the same nationality. He also stated that they all pictured the subjects from the waist up and all had similar facial features and characteristics. The photographs did have the subjects' names on the front, but at the time of the identification the name Florencio Hernandez was totally unfamiliar to the witness. This photographic line-up was similar to one approved by this court in Thompson v. State, 85 Nev. 134, 451 P.2d 704 (1969), where we said, at 140, that: "Although we do not have all of the photographs used at the police station when appellant was identified, the witnesses did testify that all were similar, were of persons of the same race and size, that the police officers imposed no suggestive influence, and that their opportunity for observation of the robber was very extensive. Thus we hold that there is no very substantial likelihood of irreparable misidentification. Therefore there was no denial of due process of law."

The record does not indicate that this photographic identification was ever relied upon by Miss Offord for her in-court identification. In fact, the record clearly shows that the critical in-court identification had a solid independent origin. Thompson v. State, supra. The victim had been within several feet of Hernandez for nearly twenty minutes during the morning of the robbery, and she testified at the trial that this observation was the basis for her in-court identification. Since the in-court identification had a solid independent origin, there was no denial of due process even if the photographic line-up was improperly conducted. Carmichel v. State, 86 Nev. 205, 467 P.2d 108 (1970); Thompson v. State, supra.

Hernandez further asserts that a new trial is mandated by the fact that the photographs used for the identification were not preserved for trial. While we do not accept the appellant's contention, we again emphasize, as we did in Thompson v. State, supra, that it is the duty of the state to preserve photographs used for identification purposes. This is necessary to guard against misidentification leading to untrustworthy in-court

identification, and to ensure that the police make no impermissive suggestions or arrangements of the photographs. A defendant's right to cross-examination regarding a photographic identification is effectively precluded if the photographs are not available. The failure to present the photographs at trial in the instant matter was not fatal to the state's case because there was no indication of any unfairness or impermissive suggestions at the photographic identification, and the in-court identification was based upon the victim's opportunity to carefully observe the appellant at the scene of the crime. Simmons v. United States, 390 U.S. 377 (1968); Stovall v. Denno, 388 U.S. 293 (1967); Carmichel v. State, supra; Thompson v. State, supra.

2. In addition to the above assertions, Hernandez contends that a new trial must be granted because of the trial court's questioning of the witness, Miss Offord. We find no error on the part of the trial court.

Miss Offord was subjected to full examination and cross-examination by the state and the prosecution, and upon the conclusion of that questioning the court asked the following questions:

"THE COURT: Mrs. [sic] Offord, you have testified concerning the events of the morning of September 21, 1969. Are you able to identify the person that came into the lobby that evening at or about 1:30, and two times thereafter?

"THE WITNESS: Yes, sir.

"THE COURT: Where is he?

"THE WITNESS: Sitting over next to Mr. Sobel with the white shirt on.

"THE COURT: What is the basis of your identification at this time?

"THE WITNESS: I remember seeing him in the lobby that night. I know he is the man that robbed me and hit me and beat me, or whatever you want to call it. I have no hestitation about that at all.

A trial judge must be extremely careful of his actions and utterances due to the profound effect they can have upon the members of the jury. Peterson v. Silver Peak, 37 Nev. 117, 140 P. 519 (1914). In the instant case the questions asked by the court were merely repetitive of those asked by counsel; no new avenues were opened by this questioning. The responses to these questions were also repetitive. There was no attempt by

the trial judge "to mislead the jury or prejudice either party" (Peterson v. Silver Peak, supra at 122), nor did he exhibit any partiality (Kinna v. State, 84 Nev. 642, 647, 447 P.2d 32, 35 (1968)). The trial judge apparently felt impelled to make certain that the witness's identification of the appellant was based upon her observations at the scene of the crime. This was permissible procedure.

Affirmed.

ZENOFF, C. J., MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.