[Nos. 1401-3; 1402-3.    Division Three.    December 23, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. CLEO DOBBS, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. PHILLIP E. HANCOCK, *Appellant*.

*Bernice Bacharach,* for appellants.

*E. R. Whitmore, Jr., Prosecuting Attorney,* for respondent.

[As amended by order of the Court of Appeals April 27, 1976.]

MUNSON, J.—Defendants appeal from a conviction of robbery, contending the trial court erred in failing to: (1) sever the trial of the defendants pursuant to CrR 4.4(c); (2) dismiss the information in that the defendants were not

tried within 60 days of their preliminary appearance as required by CrR 3.3; (3) exclude in-court identification of the defendants by the State witnesses; (4) give defendants' proposed instructions regarding the presumption of innocence; (5) provide defendants a fair trial in that the prosecutor prompted the State's principal witness to testify falsely; (6) grant the defendants a new trial based on the cumulative effect of each of the alleged errors. We affirm.

On September 19, 1974, at approximately 6:30 p.m., Mrs. Fisher observed two men drive up and park an automobile at a home occupied by Mitchell Farmer and Tommy Spruill. Mrs. Fisher observed these men remove a television set from the home. Mitchell Farmer, arriving home at this time, confronted the individuals, was assaulted and his wallet taken. Mrs. Fisher said that the individuals left in a blue 1965 "Chevie" automobile, and at her request, a friend recorded the license number as 9QT231. Approximately 1 hour later, the defendants were apprehended driving a 1965 blue Chevrolet, license No. NDT231. Upon request of the officer, defendant Cleo Dobbs opened the trunk of the automobile, where a television set belonging to Mitchell Farmer was found. A subsequent search of the car revealed a wristwatch belonging to Tommy Spruill.

Following the defendants' arrest, they were taken to the Chelan Police Station booking room. While walking down a hall to the booking facility, they were observed and identified by Mrs. Fisher and Mitchell Farmer. Other than this observation, no contact was made between the witnesses and the defendants.

On September 24, 1974, the defendants entered a preliminary appearance in Chelan County District Court. On November 4, 1974, defendant Phillip Hancock sought a severance pursuant to CrR 4.4; his motion was denied by the trial court. On November 21, 1974, defendants' trial was to commence; however, that morning the prosecution moved for an amendment of the information, which was granted. Counsel for the defendants then sought a continuance based upon the amended information and the trial was

reset for January 2, 1975. On December 9, 1974, defendants moved for dismissal pursuant to CrR 3.3, claiming they had been denied their right to speedy trial. Defendants' motion was denied and the trial was held on January 2, 1975; a guilty verdict was returned against both defendants for the crime of robbery. On January 6, 1975, the defendants moved for a new trial, which motion was denied.

1

■ In regard to defendants' first contention, CrR 4.4(c)(2) provides:

(2) The court, on application of the prosecuting attorney, or on application of the defendant other than under subsection (i), should grant a severance of defendants whenever:

(i) if before trial, it is deemed necessary to protect a defendant's rights to a speedy trial, or it is deemed appropriate to promote a fair determination of the guilt or innocence of a defendant; or

(ii) if during trial upon consent of the severed defendant, it is deemed necessary to achieve a fair determination of the guilt or innocence of a defendant.

The determination rests with the trial court. We find from a review of the record that the trial court did not abuse its discretion in refusing to grant defendant Hancock's motion for severance. *State v. Tollett*, 12 Wn. App. 134, 528 P.2d 497 (1974).

2

Defendants' contention that they were denied a speedy trial as required by CrR 3.3(c) is without merit. CrR 3.3(d)(3) provides: "The following periods shall be excluded in computing the time for trial: . . . (3) Delay granted by the court pursuant to section (e)." CrR 3.3(e)(1) provides: "Continuances or other delays may be granted as follows: (1) on motion of the defendant on a showing of good cause."

November 21, 1974, the day trial was to commence, was 59 days from the defendants' preliminary appearance. The prosecution's request to amend was granted, resulting in the defendants seeking a continuance; the granting of a

continuance constitutes a period of time expressly excluded from CrR 3.3(c).

Defendants challenge the practice of the prosecution in seeking an amendment on the 59th day after defendants' preliminary appearance, requiring that the defendants seek a continuance. By such a tactic, the defendants were forced to toll the running of the 60-day provision of CrR 3.3 in order to properly defend against the amended information. The timing of the request for the amendment can be crucial. While we do not believe, under the facts of this case, the purpose of the amendment was to frustrate the provisions of CrR 3.3 it is undenied that the prosecutor had the information upon which the amendment was based for some time preceding the motion to amend. In keeping with the spirit and purpose of CrR 3.3, the amendment should have been sought as early in the prosecution as possible. However, the granting of the amendment over defendants' objection: (1) is not assigned as error; (2) on the 59th day following the preliminary appearance, at which time the court entertained the motion to amend the information, defense counsel did not argue that if she were granted a continuance she would then seek to have the case dismissed for failure to try the defendants within 60 days of their preliminary appearance; (3) we have not been presented with a constitutional argument attacking the amendment, and (4) a continuance beyond the 60-day period does not per se violate the constitutional guarantee of a speedy trial. We therefore find the assignment without merit.

3

Defendants contend that two State witnesses' identification, having observed the defendants walking down a hallway in the Chelan Police Station on the date of the alleged robbery, resulted in an impermissibly suggestive lineup, giving rise to substantial likelihood of misidentification and thereby rendering their in-court identification inadmissible.

Both Mrs. Fisher and Mr. Farmer had viewed the defendants' activities at the Farmer residence within hours of observing the defendants in the police station. Mitchell

Farmer, having been assaulted, was in very close proximity to one of the defendants. Neither of the witnesses equivocated in his identification of the accused.

In determining whether an encounter between the State's witnesses and the defendant prior to trial resulted in an impermissibly suggestive identification procedure, we must examine: (1) the opportunity of the witnesses to have viewed the accused at the time of the crime, (2) the witnesses' degree of attention, (3) the accuracy of the witnesses' prior description of the criminal, (4) the level of certainty demonstrated by the witnesses at the confrontation, and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 34 L. Ed. 2d 401, 93 S. Ct. 375 (1972).

Utilizing this criteria, we conclude that the encounter between the defendants and these witnesses was not so impermissibly suggestive as to have resulted in substantial likelihood of misidentification. *State v. Nettles*, 81 Wn.2d 205, 500 P.2d 752 (1972); *State v. Braun*, 11 Wn. App. 882, 526 P.2d 1230 (1974).

4

Defendants contend that the trial court erred in failing to submit defendants' proposed instructions Nos. 6[1], 7[2] and 8[3], regarding the presumption of innocence. Defendants contend they were unable to present their theory of the case within the given instructions. We disagree. Instructions Nos. 5[4], 6[5], and 10[6], given by the trial court,

[1] "If the jury can reconcile the evidence before it with any reasonable hypothesis consistent with the innocence of the accused, it is its duty to do so and so find the defendant not guilty."

[2] "Where different inferences may be drawn from the facts in this case, it is the duty of the jury to presume in favor of innocence rather than of intentional and guilty conduct."

[3] "You are instructed that you may not convict the defendant unless you find that the evidence is inconsistent with any reasonable theory of innocence."

[4] "You are instructed that the law presumes the innocence of a person accused of crime, and this presumption is not a mere matter of form, which the jury may disregard at pleasure, but it is a part of the law of the land, and is a right guaranteed by that law to every person accused of a crime.

adequately afforded the defendants an opportunity to argue their theory of the case within the given instructions. No more is required. *State v. Dana*, 73 Wn.2d 533, 439 P.2d 403 (1968). Additionally, the court need not instruct on the hypothesis of innocence. *State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975).

"The presumption of innocence continues with each defendant throughout all the stages of the trial, and until the case has been finally submitted to the jury, and the jury has found that this presumption has been overcome by the evidence in the case, beyond a reasonable doubt."

"The rule of law which clothes every person charged with crime with the presumption of innocence and imposes upon the State the burden of establishing his guilt beyond a reasonable doubt is not intended to aid any person who is, in fact, guilty of crime, to escape, but is a humane provision of the law, intended so far as human agencies can, to guard against the danger of any innocent person being unjustly convicted."

"Any fact or issue may be proved either by direct or by circumstantial evidence. Both classes of proof are equally competent and legal. The only difference between them is that direct evidence is produced by witnesses testifying directly from their personal observation, while circumstantial evidence is proof of certain facts and circumstances from which the jury may infer the existence of other facts which, according to the common experience of mankind, usually and reasonably accompany the facts proven.

"A conclusion based upon direct evidence depends upon your belief in the truthfulness and accuracy of observation of the witness testifying to the fact observed; a conclusion based upon circumstantial evidence depends upon your belief as to whether such a conclusion reasonably results or is naturally inferable from the physical facts and other circumstances that have been proven.

"The facts and circumstances relied upon should be consistent with each other, and with the guilt of the defendant. They should be inconsistent with any reasonable theory of innocence. They should be of such character as to exclude every reasonable hypothesis other than that of guilt. Circumstantial evidence meeting these requirements is entitled to the same weight as direct evidence.

"If, upon consideration of the whole case, you are satisfied beyond a reasonable doubt of the guilt of the defendant, it does not matter whether such certainty has been produced by direct evidence or by circumstantial evidence. The law makes no distinction between circumstantial and direct evidence in the amount of proof required for conviction. The law merely requires that the jury shall be satisfied of the guilt of a defendant beyond a reasonable doubt by either direct or circumstantial evidence, or both."

**5**

■ Defendants contend the prosecutor committed reversible error at trial when Mrs. Fisher testified that the license number of defendants' vehicle was NQT231, contending her testimony was knowingly false. She had further testified that she realized the neighbor had incorrectly reported the number as 9QT231, because she knew that in Washington, license plates start with three letters. During cross-examination, she stated she had observed a piece of paper on which the license number NQT231 was written, on the desk of the prosecutor, which served to refresh her memory as to the correct initial letter of the license. The record does not reflect the prosecutor in any way prompted this result or that Mrs. Fisher in any way testified falsely. We find no error. The entire matter was before the jury for consideration as to its weight and credibility.

**6**

The defendants' motion for new trial having been based on each of the aforementioned assignments of error, and having determined each of the assignments of error to be without merit, we find the court properly denied the defendants' motion for new trial.

Judgment affirmed.

McINTURFF, C.J., and GREEN, J., concur.

Petition for rehearing denied February 4, 1976.

Review denied by Supreme Court April 23, 1976.