[No. 1775–3.   Division Three.   April 4, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL GERALD CHRISTIANSON, *Appellant*.

---

[7]*State v. Ferrick*, 81 Wn.2d 942, 945, 506 P.2d 860 (1973).

*Richard L. Cease, Public Defender,* and *Gerald A. Horne, Assistant,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* for respondent.

McINTURFF, J.—Michael G. Christianson appeals his jury conviction of second–degree burglary.[1] We affirm.

Following his arrest, Christianson was ordered released on his personal recognizance, but remained in custody on a subsequent parole violation detainer. Trial was had 66 days after preliminary appearance. A preliminary motion to dismiss, premised upon denial of right to speedy trial, was denied.

On appeal, Christianson renews the substance of his motion to dismiss, arguing a denial of his Sixth Amendment right to speedy trial as quantitatively defined in CrR

---

[1]RCW 9.19.020.

3.3. Our inquiry is therefore limited to the court's alleged failure to comply with its own procedural rule.

■ CrR 3.3 provides in pertinent parts:

**(b) Time Limit.** A criminal charge shall be brought to trial within 90 days following the preliminary appearance.

**(c) Priority over Civil Cases.** Criminal trials shall take precedence over civil. A defendant unable to obtain pretrial release shall have priority and the charge shall be brought to trial within 60 days following the preliminary appearance.

As interpreted, the 60–day rule of CrR 3.3(c) "refers to the ability to obtain pretrial release because of the pendency of the *current* criminal charges and is not invoked because of an inability to obtain release due to other matters."[2] Christianson was released on the burglary charge upon his personal recognizance, but remained in custody on a parole violation detainer. He was thus released on the current criminal charge but held on another matter, making the 90–day rule of CrR 3.3(b) applicable. Trial was commenced on the 66th day after preliminary appearance, resulting in no denial of right to speedy trial through failure to comply with CrR 3.3.

The same result is reached by a second route. CrR 3.3 is an enactment of the Washington State Supreme Court governing procedures in the judicial branch of state government. The rule is a directive from the Supreme Court to the superior court that a confined defendant be released by the judicial branch or be tried within 60 days. The rule makes no pretense of directing procedures in the executive or legislative branches.

Here, Christianson was released by the judicial branch on his personal recognizance but remained in custody on a parole violation detainer issued by an officer of the

---

[2]*State v. O'Neil*, 14 Wn. App. 175, 176, 540 P.2d 478 (1975); *see State v. Curry*, 14 Wn. App. 775, 777, 545 P.2d 1214 (1976); *State v. Hanson*, 14 Wn. App. 625, 630–31, 544 P.2d 119 (1975); *State v. Keith*, 13 Wn. App. 127, 132, 534 P.2d 128 (1975), *aff'd*, 86 Wn.2d 229, 543 P.2d 235 (1975).

Washington State Board of Prison Terms and Paroles, an executive agency.[3] The Superior Court thus complied with CrR 3.3 by proceeding to the limit of its power in assisting Christianson to regain his actual freedom and aid his own defense. His continued incarceration by the executive branch was beyond the court's power to control.[4] The court's argued failure to comply with CrR 3.3 is without merit, resulting in no denial of right to speedy trial upon this basis.

Christianson cites *State v. Williams,* 85 Wn.2d 29, 530 P.2d 225 (1975), in support of the argued applicability of the 60–day rule. Like Christianson, Williams remained in custody on a parole hold. He was ultimately ordered released for failure of the State to commence trial within 60 days. However, unlike Christianson, Williams "was indigent and unable to post the bond set by the court, and thus would not have been able to obtain release from custody had there been no hold placed on him."[5] It was the inability of Williams to obtain pretrial release on the current criminal charge that dictated applicability of the 60–day rule. In contrast, Christianson was released on his personal recognizance on the current criminal charge. Therefore, *Williams* is not controlling of the present case.

In his second assignment of error, Christianson argues he was denied due process of law when the court admitted evidence at trial derived from an alleged impermissibly suggestive identification procedure. Relevant facts show that during police investigation of the burglary, an eyewitness was briefly shown a photograph of Christianson. The eyewitness later identified Christianson as the burglar in a police lineup and at trial. Motion challenging the admissibility of evidence derived from this identification procedure was twice made and denied.

[3]*See* RCW 9.95.120.

[4]*January v. Porter,* 75 Wn.2d 768, 773–74, 453 P.2d 876 (1969).

[5]*State v. Williams, supra.*

■ The existence of irreparable prejudice to an accused from a suggestive identification procedure is a factual question, to be determined case by case from the totality of circumstances.[6] We conclude the totality of circumstances surrounding the present pretrial lineup and in–court identification were not so suggestive and conducive to misidentification as to amount to a denial of due process. Evidence arising from the identification procedure was properly admissible, for it was not derived from a tainted source. We will review those facts and circumstances which have led us to this conclusion.

Though we do not find them exclusive, we adopt the following guidelines for present purposes:

[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers,* 409 U.S. 188, 199, 34 L. Ed. 2d. 401, 93 S. Ct. 375 (1972).[7]

Taking these factors in order, the eyewitness had ample opportunity to "view the criminal at the time of the crime." The witness' identification of Christianson was based upon her unobstructed view of a man on the sidewalk 20 to 30 feet from her apartment window. The man made three trips to another apartment and thus passed six times before her window. The witness' attention was aroused to a sufficient degree that she noted the license number of the man's vehicle. The witness' prior description of the man fit Christianson. Her description was also consistent throughout the time in question. Identification of Christianson by

---

[6]*Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Hewett,* 86 Wn.2d 487, 494–95, 545 P.2d 1201 (1976).

[7]*See State v. Dobbs,* 14 Wn. App. 613, 617, 544 P.2d 134 (1975).

the witness was positive at the lineup and at trial. Misidentification upon these facts is improbable, making evidence derived from the identification procedure admissible.

Christianson strongly contends the momentary display of his police photograph to the eyewitness 1 day before the lineup was so suggestive as to taint evidence derived from the identification procedure. Facts do not support this argued denial of due process. The witness' view of Christianson's police photograph attached to a police report was fleeting, perhaps 2 seconds, allowing the witness no time to note details such as facial hair or writing. The witness could not recall the photograph as a police photograph, but only as a black and white photograph. Her view of the photograph was from the side. The witness felt her fleeting glimpse of the photograph had no effect on her lineup or in–court identification. According to her testimony, identification was based upon her observation the day of the crime.

Christianson also argues that eyewitness identification was uncertain, as reflected by answers elicited from the witness at trial. The witness was in fact uncooperative and reticent during direct examination, as shown in the record.

Q  Could you look around the courtroom and see if there is anyone in the courtroom that you feel you could identify as the person carrying the stereo.

A  I'd rather not. . . . I would really rather not because it was two months ago, and I was—I am trying to forget it, and I did identify him.

However, following a conversation with the prosecuting attorney during recess stressing the importance of her identification testimony, the witness made a positive identification, explaining her prior hesitancy as fright, rather than lack of certainty.

Q  And, did anyone talk to you to try to refresh your memory, to try to get you to be more positive in your identification?

A I was just scared when I was up here before, and I am still, but I know that he is the one.

We believe her nervousness understandable.

Prejudice to an accused arising from a suggestive identification procedure can often be exposed and minimized on cross-examination.[8] Christianson was accorded the protection of cross-examination of the eyewitness before the jury. Any prejudicial effect arising from the police photograph incident was not a denial of due process upon these facts.

Judgment of the Superior Court is affirmed.

MUNSON, C.J., and GREEN, J., concur.

Petition for rehearing denied May 2, 1977.

Review denied by Supreme Court October 24, 1977.

---

[8]*Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Nettles,* 81 Wn.2d 205, 208, 500 P.2d 752 (1972); *State v. Gefeller,* 76 Wn.2d 449, 453, 458 P.2d 17 (1969).