[No. 2540-2.   Division Two.   December 21, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. EUGENE W. POMEROY, *Appellant.*

*Richard L. Shaneyfelt,* for appellant.

*William E. Howard, Prosecuting Attorney,* for respondent.

PEARSON, C.J.—Defendant, Eugene W. Pomeroy, appeals from a conviction of second–degree assault. The conviction

is challenged on the ground that defendant's right to a speedy trial under CrR 3.3 was violated. We affirm.

On November 10, 1975, an information was filed, charging defendant with assault in the second degree. On November 14, 1975, defendant, who had obtained pretrial release, made his preliminary appearance and entered a plea of not guilty. The trial court also set March 24, 1976, as the date for trial, when defendant agreed to waive his right to a speed trial. The written waiver signed by defendant provided:

> COMES NOW   Eugene W. Pomeroy   , the above—named defendant, by and through his attorney,    W. J. Daly   , and having been informed of his right to a speedy trial in accordance with the provisions of Criminal Rules for Superior Court (CrR 3.3), and further having been informed that he has a right to have his trial on this matter within 90 days from the date of his first Court appearance, or within 60 days if he has been unable to obtain pre–trial release,
>
> Now, hereby WAIVES HIS RIGHT TO SUCH SPEEDY TRIAL WITHIN 60 or 90 days and CONSENTS to a trial date of the   ~~14~~   day of   ~~November~~   ,   ~~1975~~   .
>
> 

Eugene W. Pomeroy
DEFENDANT

Both defendant and the State agree that the insertion of the November 14, 1975, date was merely a clerical error. That date inserted into the form was crossed out. The pertinent portion of the report of proceedings from November 14, 1975, is set out below.[1]

---

[1]The report of proceedings of November 14, 1975, provides, in part:

"THE COURT: To the charge of Assault in the Second Degree said to have been committed on or about the 7th day of November, 1974 in Jefferson County, what is your plea, guilty or not guilty?

"MR. POMEROY: Not guilty.

"THE COURT: Enter a plea of not guilty. *He's now out on an unsecured bond. Will your client waive a speedy trial?*

"MR. DALY: *I haven't discussed that question with you, but I assume that he will if he heeds my advice.*

"THE COURT: *What we are talking about is whether you would insist upon being tried within 90 days of Tuesday, I think it was, or Wednesday.*

"MR. DALY: *It would have been Monday.*

Defendant was not brought to trial until June 9, 1976. An affidavit of a deputy court clerk for Jefferson County states that she telephoned the court–appointed counsel for defendant on March 22, 1976, and learned that defendant's attorney would be unable to try the matter on March 24, 1976, due to his illness. The affidavit further states that defendant's attorney asked to have the matter continued from March 24, 1976, and the case was subsequently reset in open court on April 2, 1976, for a 2–day trial on June 9 and 10, 1976. The affidavit was dated and filed on June 8, 1976. On June 8, 1976, defendant's motion for dismissal based upon CrR 3.3 was denied, and he was convicted after a 2–day trial on June 9 and 10, 1976.

█ CrR 3.3 requires that an accused who is able to obtain pretrial release be brought to trial within 90 days of

"THE COURT: *Within 90 days of last Monday or would you agree that the matter could be tried at some later date. Your attorney has said that he would recommend that you agree that it be tried at some later date. Are you prepared to make that decision now?*

"MR. POMEROY: *Yes.*

"THE COURT: *And you will waive a speedy trial?*

"MR. POMEROY: *Yes.*

"THE COURT: *If you will have him sign the form.* This should be what, a one-day trial?

"MR. DALY: I haven't had an opportunity to see what the testimony of the State's witnesses might be.

"THE COURT: How many people were allegedly in the establishment at the time?

"MR. HOWARD: We have, I believe, statements from four individuals. Your Honor, I would think that it could be presented in one day.

"MR. DALY: I see no reason why it couldn't, Your Honor, if we start promptly and move with due speed.

"THE COURT: *We will set a trial date of March 24th.*

"MR. HOWARD: There was a statement given by Mr. Pomeroy. Why don't we go ahead and set a hearing date.

"THE COURT: We'll set the omnibus and the 3.5 for the same day which will be February 13th at 11:00 a.m.

"MR. DALY: I might state for the record that my experience with Mr. Howard has been most courteous in response to any reasonable request, so I see no need for particular formalities.

"THE COURT: If you can agree on the omnibus order, fine, otherwise we will have the omnibus hearing on February 13th and we have to have a 3.5 hearing with the Court's presence; that will be at 10:00. *Has he signed the waiver?*

"MR. HOWARD: Yes he has, Your Honor." (Italics ours.)

his preliminary appearance. While the rule does not discuss waivers, it is clear that an accused can expressly waive the CrR 3.3 right to a speedy trial. *State v. Williams,* 87 Wn.2d 916, 557 P.2d 1311 (1976). *See generally* Annot., 57 A.L.R.2d 302 (1958). An explicit waiver must clearly appear from the record. *State v. Williams, supra; State v. DeLong,* 16 Wn. App. 452, 557 P.2d 14 (1976). And courts must indulge every reasonable presumption against the waiver of the right to a speedy trial. *State v. Williams, supra; State v. Coutlee,* 15 Wn. App. 401, 550 P.2d 39 (1976). Waiver of the speedy trial right for a specifically defined period is preferable to an unlimited general waiver. *See Cooksey v. State,* 524 P.2d 1251, 1260 n.21 (Alas. 1974).[2]

The report of proceedings from November 14, 1975, clearly indicates that defendant intended to waive his right to a speedy trial under CrR 3.3. The clerical error in the written waiver is of no consequence in view of the entire record. To resolve defendant's appeal, we must determine both the scope of his waiver, general or limited, and the effect of the waiver.

The scope of defendant's express waiver is not obvious from the record. Defendant's oral consent to waive his right to speedy trial occurred prior to the setting of a trial date and without specific reference to when the case would be tried. One option is to interpret this oral waiver, later reduced to writing, as an unlimited or general waiver that survived the March 24, 1976, trial date.

The record, however, does not reveal whether defendant waited until the trial date had been set before he signed the written waiver, which included a blank for the trial date

---

[2]The recent case of *State v. Franulovich,* 18 Wn. App. 290, 567 P.2d 264 (1977) distinguishes between a procedural CrR 3.3 right to speedy trial and the substantive constitutional right to a speedy trial. *But see* the dictum to the contrary in *State v. Williams,* 14 Wn. App. 803, 545 P.2d 572, *aff'd,* 87 Wn.2d 916, 557 P.2d 1311 (1976).

The distinction, however, makes no difference in this case, since the principles underlying the fundamental constitutional right to a speedy trial, such as the presumption against a waiver, are likewise applicable to the CrR 3.3 right. *See State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976).

consented to by defendant. This state of the record creates a patent ambiguity with reference to the intended scope and duration of the waiver.

It is our view that this ambiguity should be resolved in favor of the most limited interpretation of the duration of the waiver, which in this case means that the waiver survived only to the trial date fixed by the court. This view carries out the underlying purpose of CrR 3.3, and adds certainty to the application of CrR 3.3 by eliminating the need to interpret the subjective intention of defendant. Such a view also is consistent with the rules requiring that we indulge every reasonable presumption against waivers, and that a waiver for a limited period is preferable to a general waiver.

We hold, therefore, that where the duration of the waiver under the rule is not specified, the waiver of the procedural right to speedy trial is effective only until the date of the trial contemporaneously or subsequently set by the court.

We next turn to the consequences which attach to striking the trial date because of the illness of defense counsel. In this regard the recent Supreme Court decision in *State v. Aleshire,* 89 Wn.2d 67, 568 P.2d 799 (1977), is instructive. In that case a mistrial occurred which was not the fault of the prosecutor. The Supreme Court held that the time limits fixed by CrR 3.3 should commence running again from the date of the mistrial.

Such a ruling seems appropriate here where the trial date aborts through no fault of the State and solely because of illness of defense counsel. The reasons given by the Supreme Court in *State v. Aleshire, supra,* are equally applicable here. The certainty resulting from the adoption of a definite time period for the new trial setting is preferred over the confusion of applying a reasonable time rule, or otherwise leaving the matter to the discretion of the trial court. *State v. Aleshire, supra.*

Accordingly, we hold that when the trial scheduled to commence March 24, 1976, aborted, defendant had to be

tried within 90 days of that date if not in custody, or within 60 days if in custody.[3]

■ Here the record shows that defendant's trial occurred within 90 days, but more than 60 days after March 24, 1976. Defendant was not in custody on March 24, 1976. However, he was arrested on an unrelated charge on April 10, 1976, and held without bail. Under these circumstances the 90-day time limit applied. *State v. Christianson,* 17 Wn. App. 264, 562 P.2d 671 (1977); *State v. Curry,* 14 Wn. App. 775, 545 P.2d 1214 (1976). We hold that defendant's speedy trial rights granted by CrR 3.3 were not violated.

Defendant raises two other issues which we find lack merit. The record does not support the conclusion that defendant lacked competent and effective counsel. *See State v. Darnell,* 14 Wn. App. 432, 542 P.2d 117 (1975).

Nor is defendant's challenge to the mandatory minimum sentence prescribed by RCW 9.95.040(2) well taken. The alleged assault involved a broken beer glass. Several eyewitnesses testified that defendant had broken the beer glass by striking it against a table and had thrust the broken glass into the victim's face. One of the victim's eyes had to be removed as a result of the blow. The doctor who treated the victim testified that a sharp, jagged object had caused the wound. The trial court instructed the jury on the definition of "deadly weapon" as it is stated in RCW 9.95-.040(2), and the jury returned a special verdict that defendant was armed with a deadly weapon at the time of the commission of the crime.

■ RCW 9.95.040(2), which provides a mandatory minimum sentence for persons armed with a deadly weapon at the time of the commission of the offense, applies to all persons armed with weapons capable of producing death.

---

[3]This ruling makes it unnecessary for us to consider the question of continuances, with the accompanying requirement of a contemporaneous record thereof. *See State v. Williams,* 87 Wn.2d 916, 557 P.2d 1311 (1976); *State v. Jack,* 87 Wn.2d 467, 553 P.2d 1347 (1976).

844

Weapons which are "deadly" regardless of the circumstances of their use are listed in the statute, but the statute is not intended to exclude a weapon which is, in fact, deadly under the circumstances of its use. *State v. Thompson*, 88 Wn.2d 546, 564 P.2d 323 (1977). A broken beer glass with jagged edges can be a deadly weapon. *Commonwealth v. Sanders*, 219 Pa. Super. 79, 280 A.2d 598 (1971) (broken beer bottle with jagged ends exposed). Under the circumstances the jury could properly find that the broken glass was a deadly weapon, and RCW 9.95.015 and 9.95.040 require that the special verdict be submitted to the jury and that the jury be instructed on the statutory definition of "deadly weapon." *State v. Sorenson*, 6 Wn. App. 269, 492 P.2d 233 (1972).

We affirm the conviction.

PETRIE and REED, JJ., concur.