[No. 3402-0-III.   Division Three.   November 13, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVEN DAVID BROWN, *Appellant.*

640

*Gary C. Hugill,* for appellant.

*C. J. Rabideau, Prosecuting Attorney,* and *Irene Cleavenger* and *Pamela Cameron, Deputies,* for respondent.

ROE, J.—The Thrifty Drugstore in Pasco was robbed on September 4, 1973. Two men entered the store: one approached the cashier; the other approached the pharmacist on duty. In addition to the two employees, there was also a customer in the store who stood behind one of the men as he took money from the cashier. Later that night defendant Steven Brown and another man were arrested. About 6 years later Brown was convicted of robbery while armed with a firearm and a deadly weapon.[1] He appeals.

---

[1]Brown was convicted of robbery, RCW 9.75.010 (now RCW 9A.56.190), while armed with a firearm, RCW 9.41.025, and a deadly weapon, RCW 9.95.040. Both RCW 9.41.025 and RCW 9.95.040 are legislative enactments which enhance the penalties imposed by the criminal statutes. These two findings are addressed to different entities, that is, the Superior Court and the Board of Prison Terms and Paroles. *See State v. Hattori,* 19 Wn. App. 74, 81, 573 P.2d 829 (1978).

The day after Brown was arrested, Windle Todd, the cashier, and Mrs. Mains, the customer in the store on the evening of the robbery, were shown photographs of Brown and other men. Both identified Brown as one of the men who robbed the store. There was no physical lineup. At Brown's trial, which was held 5 1/2 years after the robbery, neither Todd nor Mains could identify Brown in court as the robber. Fingerprint evidence at the trial disclosed the Steven Brown present in the courtroom was the same Steven Brown who had been arrested in 1973. The prosecution attempted to introduce evidence of the prior identification through the testimony of a police officer who was present at the identification; the trial court refused to allow the testimony as hearsay. Brown's attorney then objected to any use of the identifications as photographs used in the array had not been preserved and thus there was no way that he could challenge the procedure. The court refused to allow any identification since the array had not been preserved, but did allow the prosecution to conduct a second identification at the police station at the close of the first day of trial.[2] Although defense counsel was present at that midtrial identification, he still objected to it because the witnesses had had the opportunity to see Brown in court. The trial court then allowed witnesses Todd and Mains to testify as to their midtrial identification of the photograph of Brown taken at the time of the arrest nearly 6 years previously. The defendant was allowed to challenge the witnesses' identification through cross–examination.

■ Brown first argues that the midtrial identification violated his due process right to a fair trial. Although photographic lineups are not barred, the courts have considered them less effective and more questionable than lineups

---

[2]During the first day of trial, the State produced a photograph of Steven Brown taken at the time he was arrested. Later that day, after the court had recessed, both witnesses were shown six photographs of males of similar age and type as the defendant, including the photograph of the defendant. From these photographs, both witnesses were able to point out the picture of Brown and identify him as the man they had seen robbing the store.

when the defendant is already in custody. *State v. Nettles,* 81 Wn.2d 205, 500 P.2d 752 (1972). However, if the police rely on a photographic identification, they must assure that the procedures used in choosing the photographs and displaying them to the witnesses are not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. Nettles, supra.* Each case must be decided in light of the surrounding circumstances. *Simmons v. United States, supra* at 384; *State v. Christianson,* 17 Wn. App. 264, 562 P.2d 671 (1977).

In deciding whether a photographic display is impermissibly suggestive, the court must consider the witness' opportunity to view the accused at the time of the crime, the witness' degree of attention, the certainty of the witness at the time of the identification, and the length of time between the crime and the identification. *Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977); *State v. Christianson, supra.* Here, the witnesses saw the robber for some minutes while he directed Todd to give him the money in the cash register. Both were paying attention to the robber. Both were confident of their identification on the day following the robbery. However, the time between the robbery and the midtrial identification was almost 6 years. During that time Brown's appearance had changed. At the time of his arrest, Brown was bearded; at the time of trial, he was clean shaven. Brown contends we should find the identification impermissibly suggestive because Todd and Mains had the opportunity to see him sitting in the courtroom as a defendant. Mains testified she was not so influenced; Todd testified he "probably" could have identified the photograph of Brown without having seen him in court. We do not find this photographic identification, although occurring after the trial had begun, so impermissibly suggestive that it violated due process.

Additionally, this identification was arguably based on the identification made at the time of the robbery, 5 1/2

years before trial. Once a witness has identified a photograph, it is possible that any subsequent identification is that of the photograph and not of the person whom the witness saw. *Simmons v. United States, supra* at 383–84; *State v. Hilliard,* 89 Wn.2d 430, 439, 573 P.2d 22 (1977). Thus, it is especially important that the defense be able to challenge the procedure used in the first identification. *State v. Nettles, supra; State v. Gefeller,* 76 Wn.2d 449, 453, 458 P.2d 17 (1969); *State v. Christianson, supra.* Brown claims he was unable to do so because the array used in that identification was destroyed.

In order to determine whether the technique used in the photographic identification is impermissibly suggestive, the court must measure the technique used against the ideal. An ideal procedure is one which includes a series of photographs whose arrangement and display in no way suggests which of the pictures is that of the suspect, a sufficient number of pictures to be a fair test of the witness' ability to identify the suspect, and an identification by only one witness at a time, rather than a group. *State v. Lane,* 4 Wn. App. 745, 484 P.2d 432 (1971). Although a photographic identification is not a critical stage at which an attorney is required, *Simmons v. United States, supra; State v. Nettles, supra,* an attorney must be able to reconstruct the array in order to prepare an effective cross–examination of the witness' identification.

There is a duty on the State to preserve photographs used as an aid to guard against misidentification which may lead to an untrustworthy in–court identification and also to ensure that the police make no impermissible suggestions or arrangements of photographs. *Hernandez v. State,* 87 Nev. 553, 490 P.2d 1245 (1971). The court recognized this duty, although limited it to cases in which the witness affirmatively identified the defendant or failed to identify him when his picture was placed within the array after the police had focused upon him as a suspect. *State v. Hudspeth,* 22 Wn. App. 292, 294, 593 P.2d 548 (1978). The duty to preserve an array arises from the reality of prejudice to

the defendant by the failure to preserve it. *State v. Canaday,* 90 Wn.2d 808, 816, 585 P.2d 1185 (1978); *State v. Hudspeth, supra.* In *Hudspeth,* since there was only a possibility that the defendant's picture was in the array in which the witnesses failed to identify him, the failure to preserve the array did not establish materiality in the constitutional sense. *State v. Hudspeth, supra* at 294.

■ The defendant urges error based on *State v. Wright,* 87 Wn.2d 783, 557 P.2d 1 (1976), which requires the State to preserve all potentially material and favorable evidence as protection afforded an accused by due process. *Wright* is distinguishable. In that murder case, the body, clothes and the bedding, which may have been crucial sources of important evidence which could have exonerated the defendant, were cremated. The evidence was intimately related to the existence of the homicide. Hence, reversal was mandated. In the case at bench, the pictures were not substantive evidence of the crime, but merely peripheral to the identification of the defendant. They were not critical, as other pictures could have been used to make up the array. Although they should have been available at cross–examination to test the weight of the testimony of the identification, they are not in the same nature as the body, clothes and bedsheets in *Wright.* A picture of the defendant, taken at the time of his arrest, was available in the reconstructed array. Such a difference in procedure does not warrant a dismissal under the rule of *Wright.*

Thus, we must determine whether the reality of prejudice to the defendant is so great that the State's failure to preserve the first array is fatal to its case.

The inability of an accused to reconstruct a photographic array may result in an erroneous conviction, *United States v. Hamilton,* 420 F.2d 1292 (D.C. Cir. 1969); we do not believe this conviction is erroneous. Although the first identification may have been tainted by the selection of photographs or the actions of the police, there is no evidence in the record to disclose such taint. Brown's attorney did not elicit any testimony concerning the procedure. He

could have asked both Mains and Todd to describe the types of photographs they were shown. He did not try to impeach their credibility by attacking their second identification as that of a photograph they had seen rather than that of the man who robbed the store that night. Since these and other questions were not asked of the witnesses, the jury had no reason to disbelieve their identifications. This lack of inquiry may have been a trial tactic or based on the facts which could not be profitably explored. There is nothing in the record which leads us to believe that the display was so impermissibly suggestive that in the totality of the circumstances there is a substantial likelihood of irreparable misidentification of Brown by Todd and Mains. Therefore, the conviction is affirmed.

GREEN, C.J., and MUNSON, J., concur.